**RUSSELL et al. v. McCRORY et al.**

**No. 6125.**

Circuit Court of Appeals, Fifth Circuit.
Nov. 20, 1931.

Rehearing Denied Dec. 14, 1931.

Ben H. Stone and J. O. Guleke, both of Amarillo, Tex., for appellants.

H. L. Adkins and W. H. Madden, both of Amarillo, Tex., and Frank M. Tatum and W. C. Strong, both of Dalhart, Tex., for appellees.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

The appellants, E. Russell and his wife, sought to recover in equity of the appellees certain profits made on the sale of a ranch in New Mexico owned by appellants, and on subsequent trades involving the proceeds. From an unfavorable decree they appeal. The main undisputed facts are these: E. Russell, in January, 1929, had bought from his brother, Irving Russell, the ranch of 2,500 acres, subject to certain incumbrances, and had paid $3,600 cash and given six purchase-money notes, each for $1,358.33, due annually. Irving Russell was indebted to the Citizens' State Bank of Dalhart, Tex., which had in its possession, but not as collateral, the purchase-money notes. Appellees McCrory, Brown, and Latham were the president, cashier, and a director of the bank, respectively. E. Russell was unsuccessful with the ranch, and had been offering it for sale since November, 1929. He defaulted in payment of his note due January, 1930, and his brother was pressing him to pay or sell. No purchaser was found, and Irving Russell and Brown proposed to buy the ranch by paying E. Russell something over $1,000 for his equity, which he refused to take.

McCrory then began dealing with E. Russell, producing as a purchaser Cookston, and, after an understanding with E. Russell, the nature of which is the principal point of dispute, made on February 6, 1930, a written agreement in his own name with Cookston to exchange the Russell ranch for Cookston's 640 acres of unincumbered Texas land, subject to an examination of titles and to McCrory's being able to acquire the Russell land. On February 7th, E. Russell came into the bank, and a written agreement was executed by him and his wife with McCrory, which on its face is a plain unambiguous contract to sell their equity in the land to McCrory for $2,500, subject to the original incumbrances aggregating $7,100 and to the notes due Irving Russell of $8,150; the land to be conveyed by warranty deed to McCrory or whomever he designates so soon as title can be abstracted and made merchantable, $500 of the $2,500 to be deposited in escrow in the bank with the contract, and the balance, $2,000, to be paid on consummation of the deal. On February 15th McCrory entered into a written agreement with Latham, whereby Latham was to take the Cookston tract of 640 acres in trade at a value of $24 per acre if McCrory should acquire it. On February 18th Latham made a written contract with one Bryan to sell him the Cookston tract at a price of $32 per acre, part cash and part credit. On February 24th, title to the ranch being found satisfactory, the whole $2,500 purchase price was paid into the bank by McCrory for E. Russell, who later received it. On February 27th Russell's deed was completed by filling the blank with Cookston's name and delivering it to him, he deeding his tract, by McCrory's and Latham's direction, directly to Bryan. Meanwhile, Irving Russell, in order to enable his brother to sell his equity for $2,500, had agreed to take $5,500 for his purchase-money notes, and a credit of this amount had been arranged for him on his indebtedness to the bank, and E. Russell's notes had been mutilated in the latter's presence by tearing off his signature. In April, 1930, E. Russell learned of the profit that had been made on the resale of the Cookston tract, and threatened a suit. Latham, not wishing to be involved, canceled his trade with McCrory, leaving McCrory with the whole situation on his hands. The result in money, supposing Bryan meets his deferred payments, is this: E. Russell has sold out for $2,500 cash and $8,150 in notes owing to his brother, Irving Russell. Irving Russell, in selling these notes for $5,500,

has taken a loss of $2,650. McCrory has invested the sums of $2,500 and $5,500, besides clearing off certain minor incumbrances and paying $1,000 commission to one Valentine for assistance in making the trade with Cookston, and has finally sold the Cookston land for about $20,480, thus making a profit which appellants assert is around $10,000. They seek to hold appellees accountable to them for it on the ground that in all these transactions appellees were acting together ·gratuitously as the agents of appellants, and, if not, that there was a fraudulent conspiracy to misrepresent · to appellants the value of their own land and the truth about what was occurring, to their damage.

Without reviewing the evidence in detail, we agree with the trial judge that there was no conspiracy, nor such co-operation among the appellees as would bind one for the others' acts or profits. The case must stand or fall upon the liability of McCrory, who alone received any profit from the transaction. If he was the agent of appellants to sell their land, of course they are entitled to an account from him, and to have all the resulting profits. If he was dealing for himself as a purchaser from them, the profits are his no matter how great or how quickly gained. The appellants testify to brief indefinite conversations with Brown and McCrory on February 5th, when Cookston was first brought by McCrory to the ranch to inspect it, from which they say they understood that Brown and McCrory were undertaking to sell the ranch for appellants so as to get them $2,500, and purely to accommodate appellant E. Russell and his brother, Irving Russell, and the bank. A servant of E. Russell, Kaufman, corroborates them to some extent. Brown and McCrory testify to a very different version of the conversations, and that from the beginning there was only talk of McCrory buying out E. Russell for $2,500 in the event he could make a trade with Cookston. The trade was made with Cookston on February 6th, after McCrory had taken an automobile trip of many miles to look at the Cookston land. On the 7th the written contract between McCrory and the Russells was executed, expressing, not an agency, but a purchase. The appellants say that they understood it to be intended only as an authority to McCrory to sell, and that the blank deed was to be used if he sold. There are difficulties in thus setting aside an unambiguous written contract in the absence of any allegations of fraud, accident, or mistake in the execution of the instrument, or any prayer for its reformation or cancellation. But, aside from that, McCrory, Latham, and Irving Russell testify, E. Russell contradicting, that at the time of executing the instrument E. Russell well understood that he was selling out for $2,500, and that the ranch was being exchanged by McCrory with Cookston for other land, and that E. Russell said he wanted only his $2,500, if he had wanted land he would have kept what he had, and that he hoped McCrory would make some money on the Cookston land.

Here is the ordinary case of conflicting testimony by witnesses who appeared in person before the trial judge. The judge, in a thorough opinion rendered at the time, and again on rehearing, very emphatically expressed his convictions as to the real truth. It is not likely that McCrory would have taken the trouble and risk he did or paid out $1,000 as commissions without expecting to have the results of the trading, for his bank was not pressing Irving Russell, whose indebtedness was not even due, and whose credit was perfectly good. As an experienced business man he would not have signed an absolute obligation in writing to buy this ranch unless he intended to buy it, and the putting up of $500 cash payment to Russell is irreconcilable with the theory of a mere agency. We think both Irving Russell and E. Russell regarded the equity in the ranch as of little value, for they had not theretofore been able to sell it for $2,500, though offering it at that figure, and Irving Russell finally sacrificed $2,650 of his purchase-money notes to get this deal through. He stands with McCrory in his testimony. The claim that E. Russell was deceived by Brown and McCrory by their stating on February 5th that the equity was worth only $2,500, and that they were making nothing on the deal with Cookston, is met by their denial and by the testimony as to what happened on February 7th above alluded to. If there was no confidential relationship, E. Russell could not rely on a mere expression of opinion as to the value of his own land on the part of the person who was buying from him. At that time nothing beyond the Cookston land was in sight, and whether anything would be made by McCrory would depend on its value, again a mere matter of opinion. Bryan as an ultimate purchaser appeared only after ten days.

We see no reason to disagree with the trial judge in his findings of fact which control the case, and his judgment is affirmed.